IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON COTE,

                                                  OPINION AND ORDER

                  Plaintiff,

      v.                                      16-cv-57-slc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Jason Cote is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). On December 29, 2009, plaintiff filed an application for disability insurance benefits alleging that he had been disabled since June 1, 2009 as a result of a learning disability, attention deficit hyperactivity disorder, behavioral issues and high blood pressure. Admin. Rec. (AR) 418–21, 523. After Administrative Law Judge Arthur Schneider denied plaintiff's claim on June 17, 2011, AR 216-25, plaintiff appealed and filed an application for supplemental security income on June 30, 2011.

The Appeals Council remanded plaintiff's case for a new hearing, directing the administrative law judge to consider both applications. AR 231-32. After a second hearing in November 2012, ALJ Schneider again denied plaintiff's claim. AR 234-49. Plaintiff appealed and the Appeals Council remanded a second for (1) evaluation of the opinions of Dr. David Biscardi, a state agency consultant, and Dr. Gary Ludvigson, a consultative examiner; (2) further evaluation of plaintiff's mental impairments in accordance with 20 C.F.R. §§ 404.1520a and

416.920a; (3) reconsideration of plaintiff's residual functional capacity; and (4) additional evidence from a vocational expert.  AR 264–66.

A *third* hearing before a different ALJ was held on June 18, 2014.  In a written decision dated August 8, 2014, ALJ Thomas Springer denied plaintiff's claims.  The ALJ found that even though plaintiff suffered from the severe impairments of attention deficit hyperactivity disorder and a learning disorder, he retained the residual functional capacity for work at all exertional levels subject to the following non-exertional limitations: (1) routine tasks; (2) being off task up to 10 percent of the workday in addition to regular breaks; (3) a reasoning development level of no more than two on the <u>Dictionary of Occupation Title</u>'s General Educational Development scale; (4) little to no contact with the public; (5) only occasional interaction with co-workers and supervisors; (6) no fast-paced or production-rate tasks; (7) few if any workplace changes; and (8) no more than simple decision making.  Relying on the testimony of a vocational expert, the ALJ found that plaintiff was capable of performing his past work as a housekeeper and stocker and bagger as well as work as an order filler, production worker and food checker.  AR 18-47.  The Appeals Council denied plaintiff's subsequent request for review, making the August 2014 decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of that decision, asserting that he is entitled to an award of benefits because the ALJ committed five errors:

> (1) he failed to explain why he did not adopt certain limitations assessed by the consulting physicians even though he gave the physicians' opinions significant weight;
>
> (2) he did not explain how the limitations he did adopt accounted for plaintiff's moderate limitations in concentration, persistence or pace and social functioning;

(3) he did not consider properly whether plaintiff's impairments met or equaled Listing 12.05(c) (intellectual disability);

(4) he did not reach a well-supported conclusion with respect to plaintiff's past work; and

(5) he gave incorrect and inadequate reasons for not finding plaintiff credible.

Dkt. 13.

For the reasons discussed below, I am remanding this case so that the ALJ can adequately account for plaintiff's moderate limitations in concentration persistence or pace and social functioning, support the limitations he adopts in his residual functional capacity assessment with evidence in the record and fully explain his listing analysis. Because I am remanding the case on other grounds, it is unnecessary to address plaintiff's remaining challenges related to his past work and credibility. Finally, I am declining plaintiff's request for a judicial award of benefits because plaintiff has not shown that the record compels a finding of disability.

The following facts are drawn from the administrative record in this case:

RECORD FACTS

Plaintiff was born on April 2, 1987, making him 22 years old when he applied for benefits and 27 years old at the time of his third administrative hearing. AR 22, 176. Throughout preschool, elementary school and middle school, plaintiff lagged academically to the degree that he was placed in special education classes for most subjects. AR 27, 177. In October 1993, plaintiff's full IQ score was 92; in October 1996, it was 81; and in January 1999, it was 78. AR 27. He was prescribed Ritalin but he stopped taking it because it made him tired. AR 192. After continuing to have problems during his freshman and sophomore years in high

3

school, plaintiff left school and enrolled in a high school equivalency diploma program in May 2004.  Id.  He graduated in May 2005.  AR 27.

From 2004 to 2013, plaintiff worked for periods of three to six months as a housekeeper in a hotel, valet parking attendant, automotive shop worker, grocery stocker and fast food worker and shift manager.  AR 183-89.  He has problems with co-workers and supervisors.  AR 195.  Plaintiff's last job was as a food preparer at Arby's for 30 to 40 hours a week from April 13, 2013 to the beginning of August 2013.  AR 179-81.  He quit following an argument with his manager.  He testified at the hearing that he would try to go back to work if a job was available to him.  Id.  Before starting work at Arby's, plaintiff collected unemployment benefits.  AR 182.  Although plaintiff alleges that he was disabled at that time, he needed to work for financial reasons.  AR 183.

Plaintiff has received minimal medical treatment for his alleged impairments.  After plaintiff left school, there is little mention of cognitive delay or attention difficulties in his medical records until February 17, 2010, when he complained of fatigue and lack of focus during a physical examination.  AR 27, 963.  Plaintiff began taking Ritalin again as an adult in 2011, and he testified that it helps calm him.  AR 192.

On November 6, 2012, one of plaintiff's treating physicians, Dr. Daniel Kattenbraker, completed a form related to plaintiff's ability to perform work-related activities.  AR 1429-30.  He checked boxes stating that plaintiff's impairments would preclude him from performing various tasks related to semi-skilled and skilled work for no more than 10 percent of the workday and tasks related to unskilled work for no more than five percent of the workday.  Id.  Dr.

4

Kattenbraker found that plaintiff had no difficulties in performing daily activities, social functioning or maintaining concentration, persistence or pace.  AR 1230.

After plaintiff applied for social security benefits in 2009 and 2011, the agency referred him for consultative examinations of his mental impairments, and several state agency physicians reviewed his medical record.  The reports relevant to plaintiff's appeal are summarized below.

1.  Dr. Biscardi

On March 19, 2010, Dr. David Biscardi reviewed plaintiff's file and completed a psychiatric review technique in which he found that plaintiff did not meet the criteria for Listing 12.02 (mental disorders) but suffered from attention deficit hyperactivity disorder and probable borderline intellectual functioning versus mild mental retardation.  AR 969.  With respect to the "B" criteria of the listings, Dr. Biscardi found that plaintiff had the following functional limitations: a mild restriction in daily activities and  moderate difficulties maintaining social functioning and concentration, persistence or pace.  AR 976.

On the same day, Dr. Biscardi completed a mental residual functional capacity assessment in which he found that plaintiff had moderate limitations in his abilities to make simple work-related decisions, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work-setting and understand, remember and carry out detailed instructions.  AR 979-81.  Dr. Biscardi found that plaintiff had a marked limitation in his ability to interact appropriately with the general public. AR 980.  Dr. Biscardi concluded that plaintiff retained the capacity to understand, remember, carry out, and sustain the performance of simple, routine tasks; complete a normal workday;

interact briefly and superficially with co-workers and supervisors; and adapt to changes and stressors associated with simple routine competitive work activities.  AR 981.

### 2.  Dr. Kenneth Clark

On June 16, 2010, Dr. Clark stated that plaintiff appeared capable of withstanding the demands of unskilled work but may have (1) difficulty with concentration, persistence or pace because of attention problems at times; and (2) some social awkwardness with more complex conversations.  AR 984.  Dr. Clark found that Dr. Biscardi findings accurately reflected plaintiff's abilities.  Id.

### 3.  Dr. Ludvigson

On February 16, 2011, Dr. Gary Ludvigson conducted a mental status, intellectual and memory examination of plaintiff for the Social Security Administration.  AR 989-99.  He noted that plaintiff had significant and unpleasant body odor, bad breath, chewed fingernails and significant beard growth.  AR 991.  Dr. Ludvigson noted that plaintiff did not appear to be malingering or factitious.  Id.  He stated that although plaintiff was able to stay focused during the evaluation, most people with attention deficit hyperactivity disorder can stay focused in one-on-one situations, and in situations that involve a fairly rapid mix of tasks.  Id.

Intelligence testing pegged plaintiff's verbal IQ at 70, with a perceptional reasoning IQ of 71, a working memory IQ of 89, a processing speed of 86 and a full scale IQ of 73.  AR 993.  Dr. Ludvigson wrote that plaintiff "most certainly has significant memory deficits, mostly in the visual area and it is possible that some of his verbal deficits on IQ testing were due more to a lack

of basic information that may have come from an inadequate educational background." AR 994.
He noted that plaintiff's auditory memory was good and that he appeared to have the skills to
respond appropriately to verbal instructions, but that attention deficit hyperactivity disorder
caused some problems with remembering those instructions later on.  AR 997.  Dr. Ludvigson
wrote that plaintiff "could work in situations like housekeeping where it is the same task, but
he moves from one room to the next."  Id.

Dr. Ludvigson diagnosed plaintiff with anxiety disorder not otherwise specified, attention
deficit disorder–combined type, learning disorder–not otherwise specified, and borderline
intellectual functioning.  AR 997-98.  He noted the following with respect to plaintiff's abilities:

- His prognosis was "fairly reasonable."

- He could understand, remember and carry out simple instructions.

- He would have some difficulty responding appropriately to supervisors
  and coworkers, particularly if ridiculed or teased.

- He has a short attention span, but if he had a job that allowed him to
  move from one task to the next he could probably perform that
  adequately.

- His work pace is somewhat slower than normal.

- He probably could withstand routine work stressors and would do better
  adapting to a variable routine than having a fixed routine.

AR 998.

In a medical source statement signed on February 23, 2011, Dr. Ludvigson found that
plaintiff had marked limitations in carrying out simple instructions; making judgments on simple
work-related decisions; understanding, remembering and carrying out complex instructions; and
making judgments on complex work-related decisions.  AR 986.  Dr. Ludvigson found that

plaintiff had moderate difficulties interacting appropriately with co-workers and responding appropriately to usual work situations and changes in a routine work setting.  AR 987.

4.  Dr. Rattan

On August 22, 2011, Dr. Rattan completed a mental residual functional capacity assessment, finding that plaintiff's impairments caused moderate difficulties in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions by psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting.  AR 1350-51.

Dr. Rattan concluded in the narrative section of the form that even though plaintiff's impairments imposed moderate limitations on his ability to work, plaintiff could perform simple, unskilled work.  AR 1352.  In a psychiatric review technique form completed on the same day, Dr. Rattan considered Listings 12.02, 12.05 and 12.06 and found that plaintiff's impairments did not meet or equal the listed criteria.  AR 1336-37.  With respect to the B criteria of the listings, Dr. Rattan noted that plaintiff had moderate difficulties completing activities of daily living, mild difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace.  AR 1346.

5.  <u>Dr. King</u>

Dr. Kyla King reviewed plaintiff's file on January 20, 2012 and affirmed Dr. Rattan's August 22, 2011 finding that plaintiff had the capacity to perform the basic mental demands of unskilled work.  She also noted that plaintiff did not display any adaptive functioning limitations required to meet Listing 12.05(c).  AR 1405.

6.  <u>Dr. Benish</u>

On July 24, 2012, Dr. Steven Benish evaluated plaintiff at the request of the Social Security Administration and found that although plaintiff had a low ability to understand, remember and carry out simple instructions due to his low cognitive ability and poor memory, he might be able to follow simple instructions and tasks.  AR 864-66.  Dr. Benish noted that plaintiff's history showed that he could not respond appropriately to co-workers; his attention deficits showed poor concentration and attention; and his low cognitive abilities would require a slow work pace.  AR 866.  He stated that it was doubtful that plaintiff could withstand routine work stresses without interpersonal conflict.  <u>Id.</u>  Dr. Benish also noted that plaintiff had a history of not adapting well to changes.  <u>Id.</u>

On a checklist form asking about work-related activities, Dr. Benish assessed plaintiff with moderate limitations in his ability to carry out simple instructions, to make judgements on simple work-related decisions, to interact appropriately with the public and supervisors, and to respond appropriately to usual work situations and to changes in routine work settings.  AR 868.  Dr. Benish also found that plaintiff had marked limitations in his ability to carry out simple instructions and interact appropriately with co-workers and extreme limitations in the ability to

9

understand, remember and carry out complex instructions and make judgments on complex work-related decisions. AR 867-78. In support of these limitations, Dr. Benish cited plaintiff's "history of repeated interpersonal skills deficits leading to firing from work," "verbal impulsivity of ADHD" and "slow processing lead[ing] to ineffective interactions." AR 868. He stated that formal testing and history support his findings but did not identify the specific tests that he was referring to. Id.

7. Dr. Lynch

Dr. Timothy Lynch testified as a medical expert during an administrative hearing held in plaintiff's case on November 28, 2012. AR 146-47. He testified that although there was some inconsistency in the record, he believed that plaintiff had a mild to moderate limitation in the areas of social functioning and maintaining concentration, persistence or pace. AR 160.

OPINION

A. Consulting Physician Opinions

Plaintiff argues that in determining plaintiff's residual functional capacity, the ALJ either ignored or failed to account properly for certain limitations assessed by the consulting physicians. Plaintiff's concerns relate primarily to his ability to maintain concentration, persistence or pace, but he also raises a few questions about the ALJ's assessment of his ability to interact with co-workers and supervisors and adapt to changes in the workplace. I will address each of these functional areas separately. (Plaintiff also lists the ALJ's failure to consider his low verbal IQ score along with the above limitations. Because his concern involves the ALJ's analysis

of Listing 12.05 (intellectual disability), I will address it in conjunction with his challenge to the step three analysis below.)

## 1. Concentration, persistence or pace

The ALJ found at both steps three and four of the sequential evaluation process that plaintiff had moderate limitations in maintaining concentration, persistence or pace. AR 25, 31. Apart from summarizing portions of plaintiff's medical record and the consultative examination reports, he did not discuss these limitations in any detail. However, the ALJ stated that he gave significant weight to the opinions of Dr. Ludvigson and the state agency physicians (Drs. Biscardi, Clark, Rattan and King) and did not express disagreement with any of them. These physicians all concluded that plaintiff was moderately limited in his general ability to maintain concentration, persistence or pace and noted one or more specific areas in which plaintiff had deficits, such as making decisions, maintaining attention and understanding, remembering and carrying out instructions. AR 30-31.

As plaintiff argues, the Court of Appeals for the Seventh Circuit has held that both an ALJ's residual functional capacity assessment and hypothetical to the vocational expert must incorporate all of the claimant's limitations, including any deficiencies that the claimant has in concentration, persistence or pace. Varga v. Colvin, 794 F.3d 809, 813 (7th Cir. 2015); O'Connor-Spinner v. Astrue, 627 F.3d 614, 619-20 (7th Cir. 2010). However, in this case, the ALJ did not include in his residual functional capacity assessment or corresponding hypothetical to the vocational expert either "moderate limitations in concentration, persistence or pace" or the more specific limitations in these areas that were noted by the consulting and reviewing

11

physicians.  AR 26, 201-02. Instead, the ALJ focused on what types of skills and work pace that he thought  plaintiff could handle by limiting him to "routine tasks," being "off task" up to 10 percent of the workday in addition to regular breaks, having a "reasoning development level of no more than two" on the <u>Dictionary of Occupation Title</u>'s General Educational Development scale, no "fast-paced or production-rate tasks" and no more than simple decision making.  AR 26.  (Neither the ALJ nor the medical or vocational experts explain what a "reasoning development level of no more than two" means, but district courts in this circuit have found it "not to be inconsistent" with "simple, unskilled work."  <u>Wiszowaty v. Astrue</u>, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012) (summarizing cases).)  The ALJ did not explain why he believed that these particular limitations accounted for all of plaintiff's documented problems with concentration, persistence or pace and he did not identify evidence in the record that supported his specific conclusions, leaving the court to guess about the basis for his reasoning.

The Court of Appeals for the Seventh Circuit has made clear that using terms like "simple" or "routine" tasks "on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace." <u>O'Connor-Spinner</u>, 627 F.3d at 619-20 ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").  <u>See also</u> <u>Stewart v. Astrue</u>, 561 F.3d 679, 685 (7th Cir. 2009) (simple, routine tasks did not account for limited ability to understand instructions); <u>Craft v. Astrue</u>, 539 F.3d 668, 677–78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration, or mood swings).  Even though a few of the ALJ's restrictions related

to pace and decision making are more specific, they do not account for all of plaintiff's documented problems with concentration or maintaining persistence.

For example, plaintiff correctly points out that Dr. Ludvigson–to whose opinion the ALJ gave significant weight–found that plaintiff's work pace was "somewhat slower than normal." AR 998. Although the ALJ limited plaintiff to "no fast-paced or production rate tasks," AR 26, he did not define what he meant by "fast-paced" or "production rate," and "[w]ithout such a definition, it would have been impossible for the VE to assess whether a person with [claimant's] limitations could maintain the pace proposed." Varga, 794 F.3d at 815. In addition, although the inclusion of a reasoning development level of two suggests an unskilled work limitation, several district courts agree that it is consistent with carrying out detailed or three-to-four-step instructions. The state agency physicians agreed that plaintiff lacked this ability. Wiszowaty, 861 F. Supp. at 947. The ALJ failed to address these apparent conflicts in his written decision.

Defendant argues that the ALJ's residual functional capacity assessment has support in the record because it is consistent with: (1) Dr. Kattenbraker's opinion that plaintiff had no difficulties with concentration, persistence or pace and would not be off task more than 10 percent of the workday; (2) Dr. Lynch's opinion that plaintiff retained the ability to engage in a "fair amount of concentration and persistence," AR 160; and (3) the statements of two reviewing physicians (Drs. Rattan and King) that plaintiff could perform the demands of simple, unskilled work. Although the ALJ stated that he gave the opinions of these physicians significant weight, he failed to cite these specific findings in his opinion and did not attempt to reconcile their apparent inconsistency with the more severe limitations assessed by the other consulting physicians whose opinions the ALJ found equally persuasive and also deserving of significant

13

weight.  "This failure to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental [residual functional capacity assessment] requires . . . remand for further proceedings."  Yurt v. Colvin, 758 F.3d 850, 859 (7th Cir. 2014).

On remand, the ALJ must fully explain plaintiff's limitations in these areas and account for them in his residual functional capacity assessment, supporting his findings with specific references to the record.  The ALJ also must incorporate the limitations in his hypothetical questions to the vocational expert.  Yurt, 758 F.3d at 857 ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.").  A judicial award of benefits is not appropriate in this case because the ALJ should be able to accurately translate plaintiff's limitations for a vocational expert, who then might conclude that there are jobs available that plaintiff could perform, even with these limitations.  Allord v. Astrue, 631 F.3d 411, 416 (7th Cir. 2011) (although claimant identified infirmities in administrative decision, record did not compel finding of disability); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 356 (7th Cir. 2005) (remand for further proceedings appropriate remedy unless "record can yield but one supportable conclusion").

2.  Social interaction

The ALJ stated in his opinion that he gave significant weight to the opinion of Dr. Biscardi, who determined that plaintiff could interact with co-workers and supervisors only "briefly and superficially."  In his residual functional capacity assessment, the ALJ limited

plaintiff's interaction with co-workers and supervisors to "occasionally," which the Social Security Administration defines as "occurring from very little up to one-third of the time." Soc. Sec. Rul. 83-10 at *6. Plaintiff argues that because "occasionally" refers to the *quantity* of time he could interact with others, whereas "briefly" refers to the *duration* of the interaction and "superficial" refers to its *quality*, the residual functional capacity assessment is inconsistent with and does not account for Dr. Biscardi's opinion.

In support of his argument, plaintiff cites two district court decisions from other circuits in which the courts found that the difference between "occasional" and "brief" or "superficial" is significant and constitutes grounds for remand. <u>Cavanaugh v. Colvin</u>, 2015 WL 1650365, at *4 (W.D. Wash. Apr. 14, 2015) ("superficial, indirect contact" throughout whole day is not the same as having only "occasional interaction"); <u>Sanders v. Astrue</u>, 2012 WL 1657922, at *13 (D. Minn. Apr. 17, 2012) ("Even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions."). At least one district court in the Seventh Circuit has reached a similar conclusion. <u>Wartak v. Colvin</u>, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (noting temporal difference between "occasional" and "superficial").

Defendant argues that the residual functional capacity assessment is not inconsistent with Dr. Biscardi's opinion (even though it does not include all of Biscardi's limitations) and is supported by the general moderate social functioning limitation found by Drs. Rattan and King and the lack of limitations found by Dr. Kattenbraker in this area. Although this may be true, it does not mean that the ALJ did not err in reaching his conclusion. As with concentration, persistence or pace, the ALJ failed to resolve the apparent conflict between Dr. Kattenbraker's

opinion and those of the consulting physicians (all of which he gave substantial weight).  In addition, Dr. Rattan specifically noted in his mental residual functional capacity assessment form that plaintiff would have difficulty accepting instructions and responding appropriately to criticism from supervisors; those abilities relate to the nature and quality of the contact, not its duration.  The ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.  "Perhaps the ALJ determined that a shift in the frequency of [social] contact would compensate for the depth of contact; but the ALJ does not say so, and there is no support for such a finding in the record."  Wartak, 2016 WL 880945, at *7.  On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment.


3.  Adaptation

        Plaintiff argues that the ALJ's finding that he is limited to routine tasks and few if any workplace changes is at odds with Dr. Ludvigson's conclusion that he would adapt better to a variable routine.  However, as defendant points out, Dr. Ludvigson did not conclude that plaintiff was limited to work with a variable routine; he stated only that plaintiff would do better in such an environment.  He also stated that plaintiff could withstand "routine work stressors." AR 998.  The opinions of the other physicians on whom the ALJ relied also made clear that plaintiff could handle the stress of routine work.  In fact, Dr. Rattan specifically noted that

plaintiff had moderate limitations in responding appropriately to changes in the work setting. Thus, the ALJ's failure to limit plaintiff to a variable routine does not qualify as reversible error.

### B.  Listing 12.05(c)

At the time of the administrative hearing, Listing 12.05 contained an introductory paragraph as well as four sets of criteria in paragraphs A through D.  20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(c) (Feb. 26 to Dec. 8, 2014 version).  The Listing is met when the introductory paragraph and any one of the additional paragraphs are met.  The ALJ found that plaintiff did not meet or medically equal the requirements of either paragraph B or C of Listing 12.05.  Plaintiff challenges his finding solely with respect to the paragraph C, which requires a claimant to show:  (1) "a valid verbal, performance, or full scale IQ score of 60 through 70; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Id.  Although the ALJ discussed the paragraph B criteria at length, he did not discuss the listing's introductory paragraph or explain his finding with respect to paragraph C.

Plaintiff argues that he satisfies § 12.05(c) because Dr. Ludvigson determined that he has a verbal IQ score of 70 and most of the medical providers providing an opinion agreed that he suffered from attention deficit disorder that resulted in at least moderate functional limitations. In response to this argument, defendant points out that elsewhere in his opinion, the ALJ noted that plaintiff had a full scale IQ score of 73, that plaintiff's IQ scores (including his verbal IQ) had decreased since 1993 and that "there has been no justification for such a drop in IQ score, as there has been no intervening or traumatic event to explain such a drop."  AR 28.  The ALJ

also reported that Dr. Ludvigson stated in his report that it was "unclear" why plaintiff's verbal skills appeared significantly better for remembering and learning new information than his test results showed but that it was possible that some of his verbal IQ deficits "were due more to a lack of basic information that may have come from an inadequate educational background." AR 29, 994.  Defendant argues that as a result, it was reasonable for the ALJ to discount the single low verbal IQ score as invalid.  Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999) (finding elements of physician's report and other evidence cast doubt on validity of plaintiff's verbal IQ score).  Although defendant raises a fair point, the ALJ did not actually make this point or otherwise explain why he found that plaintiff did not meet the paragraph C criteria of Listing 12.05.

As plaintiff notes, "[u]nder the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."  Kastner v. Astrue, 697 F.3d 642, 648 (7th Cir. 2012) (citing Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 87-88 (1943); Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010)).  In addition, even though Dr. Ludvigson seems to question the basis for plaintiff's verbal IQ score, he did not state that the score was invalid or that it did not accurately reflect plaintiff's intellectual functioning.

Defendant attempts to show that plaintiff cannot meet his burden of showing that his impairments meet or medically equal Listing 12.05 by arguing that plaintiff failed to show that he suffered from deficits in adaptive functioning, as he was required to do by the introductory paragraph to Listing 12.05.  § 12.05 (Feb. 26 to Dec. 8, 2014 version) ("Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive

18

functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."); Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) ("deficits in adaptive functioning" means "inability to cope with the challenges of ordinary everyday life").  In support of her argument, defendant cites several findings that the ALJ made in other parts of his decision with respect to plaintiff's daily activities and ability to obtain a high school equivalency diploma.  However, the ALJ did not even mention the listing's requirement for deficits in adaptive functioning, and he discussed plaintiff's daily activities only in the context of his credibility determination.  AR 30.  There is no discussion of plaintiff's ability to cope with change or challenges in everyday life.

In sum, I do not conclude that the ALJ built a logical bridge between the evidence and his conclusion that plaintiff failed to satisfy the paragraph C criteria.  Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008).  On remand, the ALJ should take care to explain the basis for his step three finding.

ORDER

IT IS ORDERED that plaintiff Jason Cote's motion for summary judgment, dkt. 13, is GRANTED and this case is REMANDED to defendant Commissioner of Social Security, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is to enter judgment in favor of plaintiff.

Entered this 1st day of February, 2017.

BY THE COURT:

/s/

Stephen L. Crocker
Magistrate Judge